IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JESUS SANCHEZ GOMEZ,[1]          :          No. 3:26cv1031
                  Petitioner      :
                                  :          (Judge Munley)
      v.                          :
                                  :
JESSICA SAGE, Warden-FCI          :
Lewisburg, *et al.*,              :
                  Respondents     :

..................................................................................................................................

## MEMORANDUM ORDER

Before the court is a *pro se* petition for writ of habeas corpus filed by Jesus

Sanchez Gomez pursuant to 28 U.S.C. § 2241. (Doc. 1, Pet. at ECF p. 3).

Petitioner challenges his present detention at the Federal Correctional Institution

in Lewisburg, Pennsylvania ("FCI Lewisburg") by Immigration and Customs

Enforcement ("ICE") and the Department of Homeland Security ("DHS"). (Id. at

ECF p. 2).  For the reasons set forth below, the petition will be granted in part.

The respondents will be directed to provide the petitioner with a bond hearing

before an immigration judge ("IJ") within 14 days.  If a bond hearing is not

scheduled within such time, the petitioner will be released on his own

recognizance.[2]

_____

[1] The court has corrected the caption to reflect the proper spelling of the petitioner's name as set forth in the record.

[2] Federal district courts are authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  Sanchez Gomez filed the instant petition while detained at

Sanchez Gomez is a native and citizen of Mexico. (Doc. 7-2, Resp. Ex. 1, Form I-213 at 2). He is married and has two minor daughters who are U.S. citizens. (Doc. 1, Pet. at ECF p. 1; Doc. 7-8, Resp. Ex. 7, BIA Decision at 4). According to the record, he is separated from the children's biological mother. (Id. Resp. Ex. 1, Form I-213 at 3). Neither Sanchez Gomez nor respondents provide any meaningful information regarding his petitioner's employment history.

Petitioner asserts that he entered the United States of America near San Diego, California on or about July 8, 1999 without being admitted or paroled. (Doc. 1, Pet. at ECF pp. 1, 2). Respondents' records tell a somewhat different story. Based on those records, it appears that the United States Border Patrol apprehended Sanchez Gomez on at least three occasions, and each time, granted him voluntary return to Mexico on the same date as the apprehension.[3] (Doc. 7-2, Resp. Ex. 1, Form I-213 at 3). The record does not reveal how or when petitioner subsequently reentered the United States. Regardless, Sanchez Gomez asserts that he presently possesses both a social security number and an employment authorization. (Doc. 1, Pet. at ECF p. 2).

---

FCI Lewisburg, which is located in the Middle District of Pennsylvania. The petitioner asserts that his continued detention violates his right to due process. Thus, the court has habeas jurisdiction over the petition. Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004).

[3] Specifically, the record reflects that petitioner was apprehended on August 14,1999 in Tecate, California; on January 13, 2000 in San Ysidro, California; and on January 25, 2000 in Otay Mesa, California. (Doc. 7-2, Resp. Ex. 1, Form I-213 at 3).

2

On September 26, 2013, Sanchez Gomez was arrested by the Delaware State Police and charged with three counts of possession of child pornography. (Doc. 7-2, Resp. Ex. 1, Form I-213 at 3). Those charges were ultimately *nolle prossed*. (Id.) Additionally, petitioner accumulated thirteen traffic violations for which he was found guilty and fined. (Id.)

Then, on May 28, 2015, a deportation officer and supervisory immigration agent (hereinafter "ICE Officers") advised the Dover Police in Delaware that they anticipated making an arrest at a residence in the Dover area. (Id. at 2.) ICE Officers were seeking an individual identified as Cesar Sanchez Gomez. (Id.) Upon arriving at the residence, ICE Officers knocked on the door, displayed their ICE badges, and identified themselves. (Id.) petitioner answered the door. (Id.) When questioned, petitioner informed the officers that Cesar Sanchez Gomez was his brother but that he was not present at the residence. (Id.) Petitioner also granted the officers permission to enter the home. (Id.)

After failing to locate petitioner's brother, the officers questioned petitioner regarding his immigration status. (Id.) Petitioner cooperated with the inquiry and produced his Mexican passport when asked for identification. (Id.) According to the record, petitioner further admitted that he was a Mexican national in the United States without lawful documentation. (Id. at 2-3). The ICE Officers thereafter took him into custody. (Id. at 3).

3

Following his arrest, petitioner was issued a notice to appear ("NTA"), an arrest warrant, and a notice of custody determination. (Id. at 4.)   The NTA, which was served on May 28, 2015, charged Sanchez Gomez as removable under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). (Doc. 7-3, Resp. Ex. 2, Notice to Appear at 1, 3).  The NTA further directed the petitioner to appear before an IJ on April 23, 2025—approximately *ten years* after the NTA was served. (Id. at 1).

On June 29, 2015, Sanchez Gomez was released from immigration custody on bond. (Doc. 7-3, Resp. Ex. 3, Custody Order at 1).  Several years later, on July 22, 2021, an IJ granted the petitioner voluntary departure through September 20, 2021, with an alternate order of removal to Mexico. (Doc. 7-5, Resp. Ex. 4, Removal Order at 1).  In the same order, the IJ also denied petitioner's applications for asylum, withholding of removal, and cancellation of removal. (Id.)  Petitioner timely appealed that decision. (Doc. 7-6, Resp. Ex. 5, Notice of Appeal at 1, 2).

As for Sanchez Gomez's recent detention, he maintains that he was arrested by the Dover police on November 11, 2025, and subsequently taken into immigration custody on November 16, 2025.  (Doc. 1, Pet. at ECF pp. 1, 2). Respondents' records provide few details regarding the circumstances surrounding Sanchez Gomez's detention.  The records only contain an Alien

Address Notice dated April 8, 2026, advising the Immigration Court that petitioner had been in ICE custody since November 15, 2025 and was transferred to FCI Lewisburg on January 27, 2026. (Doc. 7-8, Resp. Ex. 6, Notice to EOIR at 1). Thus, Sanchez Gomez has been detained for approximately seven months.

On March 20, 2026, the BIA affirmed the IJ's order of removal but remanded the matter for further factual findings and legal analysis concerning petitioner's eligibility for protection under the Convention Against Torture ("CAT"). (Doc. 7-8, Resp. Ex. 7, BIA Decision at 3, 6).  Specifically, the BIA concluded that the IJ failed to determine whether Sanchez Gomez's feared persecutors would likely torture him at the instigation, consent, or acquiescence of Mexican government officials. (Id.)

Following remand, petitioner appeared before the IJ for an individual merits hearing conducted by videoconference on May 22, 2026. (Doc. 7, Resp. Br. at 7). Neither party has provided the court with information regarding the outcome of that hearing.  The automated case information for the Executive Office for Immigration Review ("EOIR") reflects that "[a]n appeal is due by June 29, 2026."[4] Given the present procedural posture of the immigration proceedings, the court concludes that Sanchez Gomez's removal proceedings remain pending and that his order of removal is not yet final.

---

[4] See https://acis.eoir.justice.gov/en/caseInformation (last visited June 22, 2026).

In his *pro se* petition for writ of habeas corpus, Sanchez Gomez analyzes his detention under 8 U.S.C. § 1231(a) and Zadvydas v. Davis, 533 U.S. 678 (2001).[5] (Doc. 1, Pet at ECF pp. 6-10).  Under Zadvydas, a noncitizen subject to a final order of removal may be entitled to conditional release if the government cannot rebut a showing that removal is not reasonably foreseeable. 533 U.S. at 701.  That framework, however, applies only to individuals detained pursuant to a final order of removal.  As discussed above, Sanchez Gomez's order of removal is not yet final.  Therefore, neither Section 1231 nor Zadvydas govern Sanchez Gomez's detention.

On behalf of respondents, the United States Attorney's Office for the Middle District of Pennsylvania maintains that 8 U.S.C. § 1225(b)(2)(A) applies and that petitioner's detention is consistent with both the INA and the Due Process Clause of the Fifth Amendment.[6]  The parties' disagreement thus distills down to whether

---

[5] Petitioner further contends that his detention is in violation of the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.* (Doc. 1, Pet. at ECF p. 6).  Because the court concludes that Sanchez Gomez is being detained under the wrong provision of the INA, it need not address this claim.

[6] Respondents contend that the only proper respondent is Jessica Sage, the Warden of FCI Lewisburg. (Doc. 7, Resp. Br. at 19-20).  Here, consistent with Padilla, Sanchez Gomez has named the Warden as a respondent. 542 U.S. at 447 ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent.").  Because petitioner has named a proper respondent, the court need not determine whether the remaining respondents should be dismissed.

To the extent that Jessica Sage is the only proper respondent in this matter, Sage is acting as an agent of ICE and the government will be bound by the order. See Vadel v. Lowe, No. 3:25-CV-02452, 2025 WL 3772059, at *1, n.1 (M.D. Pa. Dec. 31, 2025).

Sanchez Gomez's detention is governed by Section 1225(b)(2)(A) or Section 1226(a).

Two appellate decisions align with the respondents' reading of Section 1225, Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026) and Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026). This manner of statutory construction authorizes indefinite confinement of individuals like the petitioner.

On the other hand, the Second Circuit Court of Appeals, the Sixth Circuit Court of Appeals, and the Eleventh Circuit Court of Appeals, and at least 370 federal district court judges, including the undersigned, reject the government's reading of Section 1225.[7] See Cunha v. Freden, No. 25-3141-PR, --- F. 4th ----, 2026 WL 1146044, at *4, *14–23 (2d Cir. Apr. 28, 2026); Lopez-Campos v. Raycraft, No. 25-1965, 2026 WL 1283891, at *13 (6th Cir. May 11, 2026); Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami, No. 25-14065, 2026 WL 1243395, at *5–20 (11th Cir. May 6, 2026); see also Castanon-Nava v. U.S. Dep't of Homeland Sec., No. 25-3050, --- F. 4th ----, 2026 WL 1223250, at *9–21

---

[7] This total also includes all judges in the Middle District of Pennsylvania to consider the issue. See Quispe v. Rose, No. 3:25-CV-2276, --- F. Supp. 3d ----, 2025 WL 3537279, at *5 (M.D. Pa. Dec. 10, 2025) (Mehalchick, J.); Patel v. O'Neil, No. 3:25-CV-2185, 2025 WL 3516865 at *5 (December 8, 2025) (Mariani, J.); Nossov v. Hoover, No. 1:25-2562, 2026 WL 711691, at *3 (M.D. Pa. Mar. 13, 2026) (Mannion, J.); Diaz Aparicio v. Lowe, No. 3:25-CV-02413, 2026 WL 526702, at *8 (M.D. Pa. Feb. 25, 2026) (Saporito, J.); Romero v. Lowe, No. 4:26-CV-00009, 2026 WL 296215, at *5 (M.D. Pa. Feb. 4, 2026) (Brann, C.J.); Hernandez v. Kunes, No. 1:25-CV-01847, 2026 WL 411726, at *5 (M.D. Pa. Feb. 13, 2026) (Wilson, J.); Chaudhari v. Rose, No. 3:26-CV-242, 2026 WL 540378, at *6 (M.D. Pa. Feb. 26, 2026) (Neary, J.).

(7th Cir. May 5, 2026) (Lee, J.) (portion of lead opinion not joined by concurring judge). The respondents indicate their awareness of these prior outcomes. (Doc. 7, Resp. Br. at 2) (collecting cases). The court thus reads the response as only preserving a narrow Section 1225(b)(2)(A) versus Section 1226(a) legal argument for appellate purposes.

With respect to this matter, the court sees no reason to deviate from Hernandez Alvarez, Cunha, Lopez-Campos, or its prior decisions.[8] Although Sanchez Gomez entered the country without being admitted or paroled, immigration authorities presumably released him on his own recognizance on one occasion and on bond on another. Thus, the court concludes that Section 1226(a), not Section 1225(b)(2)(A), applies to petitioner's detention.[9]

---

[8] The Third Circuit Court of Appeals heard oral argument regarding this issue on May 11, 2026, based on the government's appeals in Morocho v. Jamison, No. 5:25-CV-05930-JMG, 2025 WL 3296300 (E.D. Pa. Nov. 26, 2025), app. filed sub nom. Morocho v. Warden Phila. FDC, No. 26-1150 (3d. Cir. Jan 22. 2026) and Andrade v. Rose, No. 26-603, 2026 WL 401189 (E.D. Pa. Feb. 12, 2026), app. filed sub nom., De Andrade v. Director Phila. Field Off. Immig., No. 26-1454 (3d Cir. Mar. 2, 2026).

[9] Sanchez Gomez is an "applicant for admission" under Section 1225(a), but he is not "seeking admission" because he is not requesting lawful entry into the United States after inspection and authorization. Cunha, 2026 WL 1146044, at *23 (2d Cir. Apr. 28, 2026). Moreover, the government's reading of Section 1225 "defies the statute's context, structure, history, and purpose; contradicts the Supreme Court's dicta in Jennings [v. Rodriguez, 583 U.S. 281 (2018)] and longstanding Executive Branch practice; and its interpretation of the statute raises serious constitutional questions that should be avoided even if the statutory language were ambiguous." Id.

8

Under Section 1226(a), a noncitizen in removal proceedings *may* be detained pending a decision on removal. 8 U.S.C. § 1226(a). However, pending a removal decision, the noncitizen also may be released on bond or conditional parole following an individualized hearing before an immigration judge. 8 U.S.C. § 1226(a)(1)–(2); 8 C.F.R. §§ 236.1(d), 1236.1(d).

As for the constitutional issues raised in Sanchez Gomez's *pro se* petition, it is undisputed in this case that he entered the United States illegally without being initially admitted or paroled. People who enter this country without legal authorization are not stripped immediately of all their rights because of this single illegal act. See Lozano v. City of Hazleton, 496 F. Supp. 2d 477, 498 (M.D. Pa. 2007), aff'd in part, vacated in part, 620 F.3d 170 (3d Cir. 2010), cert. granted, judgment vacated sub nom. City of Hazleton, Pa. v. Lozano, 563 U.S. 1030 (2011), and aff'd in part, rev'd in part, 724 F.3d 297 (3d Cir. 2013). That is, the Due Process Clause applies to everyone, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693.

Sanchez Gomez has been in ICE custody for nearly seven months. "No person," including the petitioner, "shall…be deprived of life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process

9

Clause from arbitrary governmental action." Foucha v. Louisiana, 504 U.S. 71, 80 (1992) (citation omitted); see also Zadvydas, 533 U.S. at 721 (Kennedy, J., dissenting) ("both removable and inadmissible aliens are entitled to be free from detention that is arbitrary or capricious.").

Under the facts presented here, a consideration of the procedural due process factors set forth in Mathews v. Eldridge, 424 U.S. 319 (1976) supports the conclusion that Sanchez Gomez's continued detention at FCI Lewisburg without a bond hearing under a mandatory detention statute is a violation of his constitutional rights.[10]  Although Sanchez Gomez was previously charged with criminal offenses, those charges were ultimately *nolle prossed*.  Furthermore, the

---

[10] Those factors are: 1) the private interest that will be affected by the official action; 2) the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards; and 3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. Mathews, 424 U.S. at 335.  First, petitioner's private interest is the interest in not being physically detained by the government, which "is the most elemental of liberty interests[.]" Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004). "The restriction of liberty is particularly acute here where, absent a bond hearing, he would be detained for months or even years while his case proceeds." Cunin v. McShane, No. 3:25-CV-1887, 2025 WL 3542999, at *2 (M.D. Pa. Dec. 10, 2025) (Neary, J.) (citation omitted).  Second, he has been detained without any apparent procedural safeguards, including the ability to obtain a bond hearing. See id. ("There is a certainty—not merely a risk—that the failure to grant [petitioner] a bond hearing would unlawfully deprive him of the opportunity to make the case for his release and incarcerate him indefinitely."); see also Patel v. O'Neil, No. 3:25-CV-2185, 2025 WL 3516865, at *6 (M.D. Pa. Dec. 8, 2025) (citing Bethancourt Soto v. Soto, No. 25-CV-16200, 807 F. Supp. 3d 397, 409 (D.N.J. 2025)); Quispe, 2025 WL 3537279 at *7.  As to the third consideration, the government has an interest in detaining noncitizens to ensure their appearance at future immigration proceedings and to prevent danger to the community. The government believes that it may vindicate those interests through detention without any individualized determination that this petitioner poses a flight risk or danger. But this goes too far for the reasons discussed in the body of this memorandum.

10

government has previously exercised its discretion to release the petitioner from immigration custody on bond. On the record presently before the court, there is no basis to conclude that a different result is warranted now.

Habeas courts "have the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." Boumediene v. Bush, 553 U.S. 723, 779 (2008). Sanchez Gomez's continued detention without a bond hearing under Section 1225(b)(2)(A) violates his due process rights.

That said, the order issued in this case will not grant Sanchez Gomez outright release from FCI Lewisburg as requested. Rather, because of the violation of his due process rights, the petitioner is entitled to a timely bond hearing with a neutral IJ where the government will bear the burden to justify his continued detention by clear and convincing evidence that "must be individualized and support a finding that continued detention is needed to prevent him from fleeing or harming the community." German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 214 (3d Cir. 2020) (citation omitted). Given the application of this standard in other contexts, this is the standard that must be applied by the IJ. See id. ("Even so, we see no basis for abandoning the settled

11

rule that when a party stands to lose his liberty, even temporarily, we hold the Government to a higher burden of proof.").

The court will add one caveat. Based on the lack of evidence of criminal activity or risk of flight provided in response to the habeas petition, if the government does not provide Sanchez Gomez with a bond hearing within 14 days in accordance with this memorandum, the petitioner will be ordered released from FCI Lewisburg on his own recognizance.

Consequently, for the reasons set forth above, it is hereby **ORDERED** that:

1) Sanchez Gomez's *pro se* petition for writ of habeas corpus, (Doc. 1), is **GRANTED** in part;

2) Sanchez Gomez's detention is not governed by 8 U.S.C. § 1225(b)(2)(A) and violates his right to due process of law;

3) Respondents shall, **within 14 days of the date of this order,** provide Sanchez Gomez with an individualized bond hearing in accordance with the analysis in the memorandum order;

4) If Sanchez Gomez does not receive a bond hearing within the 14-day period, he shall be released **no later than July 7, 2026 at 12:00 noon** under the same circumstances that existed prior to his detention, including, release: (1) within the area near where petitioner lives or was employed; (2) without the imposition of additional conditions (such as ankle monitors or

12

electronic tracking devices); (3) with all clothing and outerwear worn at the time of the detention or other appropriate attire; and (4) with all personal property, including, but not limited to, any driver's license, passport, immigration documents, currency, or cell phone that was seized at the time of detention and that is currently in their custody, possession, or control, whether maintained directly by respondents or by any contracted or affiliated facility;

5) On or before **July 7, 2026 at 12:00 noon**, respondents shall file a declaration or affidavit pursuant to 28 U.S.C. § 1746 confirming that Sanchez Gomez has either been provided with a bond hearing or has been released from custody; and

6) The Clerk of Court is directed to **CLOSE** this case.

Date: 6/22/26

BY THE COURT:

**JUDGE JULIA K. MUNLEY**
**United States District Court**

13